## WILLIAM MELCHER & another vs. JOHN CHASE & others.

A testator by his will gave to J. C. "my homestead, including the outbuilding, garden, tillage and pasture land, live stock, farming tools," on condition that he should maintain S. M. and M. M. during their lives; and directed his executors to sell all other real estate that he might die possessed of. By a codicil, made on the day of his death, he ratified and confirmed his will. At the dates of his will and of his death, he owned three parcels of land. The first parcel, which had been conveyed to him in different parts by different deeds, comprised his house lot with a mansion-house and outbuildings, and a cottage originally not divided from said lot but afterwards surrounded by a fence and usually occupied by his manservant; this parcel contained also a small amount of pasture, mowing and tillage land. On the second parcel, which was small, and part of which had been conveyed to him at the same time with a portion of the first parcel, and part by another deed, and which was separated from the first parcel only by a railroad, he had built a cottage for S. M. and M. M., who were dependent on his bounty. The third parcel, containing about eight acres, and lying a short distance from the first parcel, consisted of pasture, mowing and tillage land. The first and third parcels were farmed together, and the products of both indiscriminately used for the support of his family and live stock. The stock could not have been supported from the products of the first parcel. The testator at the time of the will had other real estate, but had parted with it all at the time of his death. *Held,* that the three parcels passed by the devise to J. C.

BILL IN EQUITY by William Melcher and William W. Johnson, executors of the will of John Chase, praying for instructions as to the construction of the will. The case, which was referred to a master, and reserved on his report and the pleadings, by the chief justice, for the consideration of the full court, was substantially as follows:

The testator made his will March 1, 1864, containing these provisions:

" I give to my wife Nancy, the use, occupancy and income of all the real estate I shall die seised and possessed of, including all the live stock, farming implements, carriages, household furniture, and all productions of land, then growing or stored, to have and to hold to her, for and during her life."

" At the decease of myself and wife, Nancy Chase, I give and bequeath to John Chase, Jr., son of my brother Calvin Chase, my homestead, including the outbuilding, garden, tillage and pasture land, live stock, farming tools, and my silver plate and library, or all of which I may have in my possession at the decease of myself and wife Nancy; to hold in fee, on condition that

said John, Jr., do maintain my sister Sabra Murray, and her husband Michael Murray, in a good and comfortable manner during their life.

" I give the Universalist Society of Chicopee the use and income of the church now occupied by said society, with the stores and cellars under the same, so long as preaching by said denomination of Universalists shall be supported and continue preaching in said church, and no longer.

" All my other real estate, not heretofore named, that I may die possessed of, I direct my executors to dispose of, and the proceeds to be given to the heirs as named in this will."

The will contained many other legacies. Against the different clauses of the will was written the amount of the gifts therein contained. Against the clause containing the gift to John Chase, Jr., was written " $8000."

On May 11, 1866, the testator made a codicil, in which he revoked the devise to the Universalist Society; gave them, in lieu thereof, the sum of $900; provided for the payment of legacies to his executors, and, except in these particulars, ratified and confirmed his will " in everything." He died the same day.

At the dates of the testator's will and of his death he owned the three following parcels of land, in Chicopee:

The first parcel was bounded 231 feet on the west by Grape Street, and extended easterly therefrom about 806 feet; the westerly portion of the parcel was used by the testator as his house lot. On it were his mansion-house, outbuildings and grapery, and nearly an acre was devoted to a garden, in the northwest corner of which the testator, several years since, built a cottage. This cottage, around which a fence was subsequently put up. was occupied, most of the time, by the testator's manservant, the rent being, by agreement, made part of the compensation for his services. For two seasons, however, next preceding the testator's death, the cottage was rented to Richard S. Dwight, who was not in the testator's employ, the manservant continuing to live in another house, which he had hired and occupied before entering the testator's service. The easterly portion of this parcel was divided into a pasture lot, a mowing lot, and a

tillage lot. The southern part of the house lot and the tillage lot were conveyed to the testator in 1836, by a deed on the back of which the testator had written in pencil the words " My house lot." The residue of this first parcel was conveyed to the testator by three subsequent deeds, given in 1838, 1842 and 1847. By the deed of 1838 a portion of the second parcel next mentioned was also conveyed to the testator.

The second parcel was a small triangular piece of land, lying north of the house lot and separated from it by the road of the Connecticut River Railroad Company, and on which the testator had built a cottage for Michael and Sabra Murray aforesaid, who occupied it up to the time of the testator's death, and were in part or wholly dependent on his bounty for their support. The portion of the parcel not conveyed to the testator in 1838, as above stated, was conveyed to him in 1862. The railroad was not built till after 1838.

The third parcel of land, containing about eight acres and being distant from the first parcel on the highway about 846 feet, contained pasture, mowing and tillage land. " The agricultural products of this parcel were carried to the testator's house lot, and there consumed. No difference was made between the products of these two lots. The farming of both was carried on together. The testator in his talk did not make any distinction in speaking of these parcels of land, by calling one his homestead and the other his farm, but spoke of them by their names. He kept generally two horses, two cows and two hogs ; and had a large supply of farming tools, sufficient for the use of both lots. The produce of his house lot would not have been sufficient to support his stock."

At the date of the testator's will he owned the Universalist Church building and two house lots in Chicopee, but had sold them all before his death. In his return to the assessors of Chicopee in 1859, the testator returned what he then owned of the first and second parcels as " Four acres land, house and outbuildings, $4300 ; " and returned the third parcel, separately, as " land on Chicopee Falls road." In his return in 1863, he returned the first and second parcels as " Real estate, my home-

stead, house, outbuildings and lot, $3200. Two cottages and lots, $800 each, $1600 ; " and the third parcel, separately, as of the value of $1000.

*M. P. Knowlton*, for John Chase, Jr.

*H. Morris*, for other parties in interest.

GRAY, J. The court is of opinion that the terms of the devise to John Chase, Jr., as applied to the facts reported by the master, manifest the testator's intention to include therein not merely his mansion-house lot in the strictest sense, with the small amount of mowing, tillage and pasture land connected with it, but also the two cottage lots adjoining, originally not divided from it by fence or otherwise, one of which was usually occupied by his manservant, and the other occupied to the time of his death by his sister and her husband, for whom the testator had built the house thereon, and with whose support he expressly charged this devise ; and also the eight acres of pasture, mowing and tillage land, lying within a short distance upon the highway, and the farming of which and of the similar lands nearer his dwelling-house was carried on together and with the same tools, and the agricultural products of which, without distinction, were taken to his house lot and there consumed by his family and live stock.

At the date of the will, the testator owned several other parcels of real estate. The residuary devise, under which the other defendants claim, was in terms limited to " other real estate not heretofore named," and could not be enlarged, at the expense of a previous specific devise, by the sale of other lands between the making of the will and the death of the testator ; and the affirmation of the will by the codicil did not change the meaning or limit the operation of that specific devise.

As all the lands in question were included in the devise to John Chase, Jr., the executors have no authority to sell any part of them for the benefit of the other heirs of the testator under the power contained in the residuary clause.

*Decree in favor of John Chase, Jr.*