H. WILBUR DUDLEY & others *vs.* INHABITANTS OF MILTON.

Norfolk.    March 9, 1900. — May 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Devise of Premises on both Sides of Country Road.*

In view of the history of the occupation of premises consisting of a lot with a barn on one side of a country road and a house just opposite on the other, a devise to A. of "the house in which he now lives, situated on B. Road, M., subject to a mortgage," etc., is construed to embrace the barn lot.

PETITION to the Superior Court for a jury to assess damages for the taking of land by the respondent, for the widening of Brook Road in Milton. Trial in the Superior Court, before *Richardson*, J., who reported the case for the consideration of this court upon a certain ruling stated in the opinion; and the petitioners alleged exceptions. If the ruling was right, judgment was to be entered for the petitioners for $1,765.82; otherwise for $2,472.06 and interest.

*G. H. Russ*, for the petitioners.

*J. D. Colt*, (*J. R. Dunbar* with him,) for the respondent.

HOLMES, C. J.    This is a petition for the assessment of damages caused by the taking of land for the widening of a

road in Milton. Land was taken on one side of the road from a lot upon which stood the petitioners' house, and on the opposite side from a lot upon which was a barn. At the trial the judge ruled that the petitioners had failed to prove their title to the last mentioned parcel, and could not recover any damages for the taking. The petitioners excepted. The history of the title was this: In September, 1880, both lots were conveyed to Mary S. Dudley, under whom the petitioners claim. Two years later they were mortgaged by her to a savings bank for $1,600. In August, 1883, they were sold upon execution for less than $100 to one Bosson, who, in February, 1884, conveyed them to Susan A. Twombley, Mary S. Dudley's mother. A month or so later, on March 15, 1884, Mrs. Twombley made her will, and by it she devised to her daughter Mary " the house in which she now lives, situated on Brook Road, Milton, and subject to a mortgage of sixteen hundred dollars and interest," etc. Mrs. Twombley died in the same year, and her will was proved on September 17, 1884. Mary S. Dudley is dead. The petitioners are her husband and children.

The husband testified that he was living upon the property when he bought it; that he moved on it in April and bought in September. This testimony clearly means that he was living upon the whole of the property which was bought in September, 1880. He added that he built the walls on both sides of the street, that he was in business there, and set his walls back to give him more room. This again shows that he was occupying both sides of the road, exercising dominion over both parcels, carrying on business upon them, and adjusting the walls upon them to suit his convenience. He further testified that he was living upon the property now, and had lived upon it all the time. The expression " the property " is used throughout his testimony to signify the whole purchase. We must take it, therefore, that the petitioners are seised of both parcels in question, and have occupied them, undisturbed, so far as appears, since Mrs. Twombley's death. Probably the petitioners were surprised by the request upon which the ruling excepted to was made, or they would have brought out their seisin more distinctly; but as the evidence stands it can mean but one thing.

In view of the history of the premises we are of opinion that

the evidence shows that the second parcel is embraced in the devise to the petitioners. It was a lot with a barn, just opposite the house, and it would not be a violent conjecture to presume that the barn was built for occupation, as it was occupied, in connection with the house, according to a common New England habit. The two lots were small. The one in question was little more than a barn lot. The words " the house in which she now lives " are capable of a meaning wide enough to include barn as well as house. " An acre or more may pass by the name of a house." Co. Lit. 5 b. The reference to the occupation, the size and character of the lots, and the fact that they had been bought and kept together, all point to our construction. And this construction is slightly confirmed by the introduction of the reference to the mortgage by the word " and "; (" situated on Brook Road, Milton, and subject to a mortgage.") The " and " suggests that the description is still continuing, and that the mortgage is mentioned for further identification of the land. The mortgage covered both lots.

The question is not what would be a sufficient description in an indictment or a sheriff's return, but what is the meaning of certain words according to the popular habits of New England speech. From that point of view we have not much doubt as to how we should read the will. See *Bridge* v. *Bridge*, 146 Mass. 373, 377; *Backus* v. *Chapman*, 111 Mass. 386, 387; *Melcher* v. *Chase*, 105 Mass. 125; *Aldrich* v. *Gaskill*, 10 Cush. 155, 158; *Doe* v. *Collins*, 2 T. R. 498.

*Judgment for $2,472.06 and interest.*