WILLIAM MILLERICK & another *vs.* WILLIAM PLUNKETT
& another.

Bristol.    October 25, 1904. — November 28, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy*, Construction.

A will contained the following: "I devise to my wife A. the cottage house and
the land 'appertenant' thereto.  Being the house I now live in and situate on
William Street in Fall River."  Then followed an attempted description, which
gave the boundaries only of the lot first owned by the testator on which the
house originally was built and omitted a strip of land belonging to the testator,
extending twenty-three feet farther on William Street, on which stood the
greater part of an ell, which had been added by the testator to his house, and
all of his barn, with a path and also a plank walk between the house and the
barn, used as an outside kitchen, and a vegetable garden.  *Held,* that the
erroneous description must yield to the intention of the testator that his wife
should have not only the whole of the house and the land under it but also the
rest of the twenty-three feet used as appurtenant to the house, extending to a
lot sold by the testator before his death, revoking by such sale a devise of the
last named lot contained in his will.

PETITION, filed March 12, 1904, in the Court of Land Regis-
tration, now by St. 1904, c. 448, the Land Court, for the regis-
tration of the title to certain real estate on William Street in
the city of Fall River, claimed by the petitioners as the heirs at
law of Ann Plunkett, widow of Joseph Plunkett, by whose will
the petitioners alleged that the whole of the estate claimed was
devised to Ann including the portion in dispute.

The case was tried before *Davis,* J., who found the following
facts:

Joseph Plunkett on October 11, 1895, the date of his will, was
the owner of all the land on the south side of William Street
in Fall River between Mulberry Street and Grant Street,
including the premises in question. The whole of the land
originally owned by him is shown by a plan which was made a
part of the record and of which a reduced copy is printed on the
following page.

This property had been acquired by Plunkett in two lots.
The first lot, which he purchased in 1867 from one Corbett, was

about one hundred and twenty-five feet long on William Street, by fifty-three and seven hundred and forty-three one thousandths feet deep. On this tract, in or about the year 1870, he erected a house at the corner of Grant and William Streets, setting off therewith about sixty-five feet of land on William Street from the corner of Grant Street. On the west side of the Corbett parcel stood a cottage house occupied by Plunkett as a dwelling for himself and his wife and children from the time of its purchase until his death.

In 1872 Plunkett acquired from his wife through a third person the tract between the former Corbett land and Mulberry Street, one hundred and twenty-five feet long on William Street by fifty-three and seven hundred and forty-three one thousandths feet deep. This land had been conveyed to his wife in 1869 by the Blackstone Manufacturing Company.

In or about the year 1882, Plunkett built an ell on the west side of his cottage house, extending it ten and three tenths

feet westerly as shown on the plan, across the original boundary line between the former Corbett and Blackstone Manufacturing Company lots as shown on the plan. This ell contained two bedrooms, and was supported by a stone foundation. The barn, later used as an outside kitchen, shown on the plan, was moved to its present position by Plunkett about 1883. The house had one cellar door, opening out from the west wall of the bay window on the front of the house. This door was put in by Plunkett, and starting about three feet therefrom a path led around the west side of the ell, and across the land in dispute, to the barn or outside kitchen. This building sometimes was used in summer for cooking and for washing clothes in connection with the cottage down to or through the year 1895, and thereafter it was used mostly for wood.

The household washing usually was done in the cellar of the house, and then was carried out through the cellar door and along the path around the westerly side of the ell and the rear of the house to the clothes yard east of the house. There also was a plank walk from the rear door of the original house to the east side of the barn. The land at the west of the cottage was used by Plunkett as a vegetable garden. This garden extended to Mulberry Street before the sale to the Goldens in 1897 referred to below, and thereafter it extended to the Goldens' east line.

On October 11, 1895, Joseph Plunkett made his will containing the following provisions :

" First, I devise to my wife Ann Plunkett the cottage house and the land ' appertenant ' thereto. Being the house I now live in and situate on William Street in Fall River. The land begins at the northwest corner of lot to be described, thence running easterly along the line of William Street sixty feet, thence running southerly fifty-three & 743-1000 feet, thence running westerly sixty feet to the land which formerly belonged to the Blackstone Mnfg. Company, thence northerly fifty-three & 743-1000 feet to the point of beginning.

" Second, I devise to my wife Ann Plunkett, and my daughters Mary Wrightington and Elizabeth Andrews and my sons Edward Plunkett and John Francis Plunkett, the house on the corner of Grant and William Street with the following parcel of land which is ' appertenant '. Beginning at the northeast corner of the lot, thence running southerly fifty-three & 743-1000 feet along the westerly side of Grant Street; thence running westerly sixty-five feet, thence northerly fifty-three & 743-1000 feet to William Street, thence easterly sixty-five feet to the point of beginning. The said house and land to be divided among them in equal shares, share and share alike.

" Third, I devise to my sons William Plunkett, Joseph Plunkett, Edward Plunkett and John Francis Plunkett the lot of land at the corner of William and Mulberry Streets, which is the land formerly owned by the Blackstone Mnfg. Co. and contains twenty-four & 67-100 rods of land more or less."

On April 8, 1897, Joseph Plunkett conveyed to Richard and Catherine I. Golden, by full warranty deed, the parcel of land

on the corner of William and Mulberry Streets, fifty-three and seven hundred and forty-three one thousandths feet deep and one hundred and two feet long on William Street, and bounding easterly on other land of Plunkett. During his life, Plunkett habitually spoke of the lot originally owned by the Blackstone Manufacturing Company as the " Blackstone lot," and after the conveyance to the Goldens, said to his son William, one of the respondents, that he had sold a part of the Blackstone lot and had a part of it left. He also said to his son William and his daughter Mary, also a respondent, at the funeral of his son Edward and many times before, that the Blackstone lot was to go to the boys. Edward died April 15, 1896.

Joseph Plunkett died on May 9, 1898, and the above will of October 11, 1895, containing the foregoing provisions was proved on July 1, 1898.

Joseph Plunkett's wife Ann survived him and died intestate on December 17, 1902.

Of the four sons mentioned in the will one is the respondent William and the other three, Joseph, Edward and John Francis, died before the testator and before the deed to Golden but after the execution of the will, two of them unmarried and without issue and one of them leaving issue since deceased.

The respondents claimed title, William Plunkett as a devisee under the will, and the other respondents as heirs at law of Joseph, to so much of the demanded premises as lay westerly of the original boundary line between the Corbett and the Blackstone lots, being a strip of land twenty-three feet wide next east of the Golden land and including the old barn and a portion of the ell of the house as shown on the plan.

The judge found title proper for registration in the petitioners to so much of the demanded premises as lay east of the original boundary line between the Corbett and Blackstone lots, being the tract fifty-nine and ninety one-hundredths feet wide as shown on the plan, and to so much, if any, of the demanded premises which formerly formed a part of the Blackstone lot as passed to Ann Plunkett under the will of her husband.

On the foregoing facts the petitioners requested a ruling, that under the will of Joseph Plunkett there passed to Ann Plunkett the entire tract of land lying between the Golden and Meadow-

croft parcels as shown on the plan, and the respondents requested
a ruling that no portion of the former Blackstone lot passed by
the devise to Ann.

The judge refused to give either ruling as requested, but ruled
instead as matter of law, that under the will of Joseph Plun-
kett, as to the premises in controversy, his widow took title only
to the cottage house, as shown on the plan, with the land there-
under, and to the tract of land fifty-nine and ninety one-hun-
dredths feet in width lying easterly of the land formerly of the
Blackstone Manufacturing Company, and ordered a decree for
registration of title in the petitioners in accordance therewith.

To the refusals to rule as requested by them respectively, and
to the ruling as given, both the petitioners and the respondents
excepted, and, at the request of the parties, the judge reported
the case for determination by this court.

If the ruling and refusals to rule were right, a final decree was
to issue as ordered; otherwise, such final decree was to be en-
tered as this court might direct.

*E. Higginson,* (*J. W. Cummings* with him,) for the petitioners.

*I. Brayton,* for the respondents.

KNOWLTON, C. J.    This case presents but a single question,
namely, What is the proper interpretation of the will of Joseph
Plunkett, in reference to the devise to his wife of the house in
which he lived, with the land appurtenant thereto. The dif-
ficulty arises from the use of terms of description, in that devise
and in other parts of the will, which are inconsistent with one
another.   The mistake probably arose from the testator's failure
to remember the true location of the boundary line between lots
acquired by him at different times.   The will was made in 1895,
and he had owned the greater part of the land since 1867.   The
other part his wife acquired in 1869, and conveyed to him
through a third person in 1872.   The cottage house in which the
testator lived, as originally constructed, had its westerly wall
within about two and one half feet of the westerly line of the lot
which he first purchased.   In 1882 he built an ell on the west
side of the house, extending it ten and three tenths feet, so that
it stood over between seven and eight feet upon the land con-
veyed to him by his wife.   This ell contained two bedrooms,
and was supported by a stone foundation.   The next year a very

small barn was moved upon the rear portion of the lot, so that a part of it was directly back of the ell and a part of it extended farther westward. According to the plan, the front part of the barn was not more than six or eight feet from the rear of the ell. The cellar of the house had but one door, and this was put in by the testator. It was connected directly with the barn by a path. The rear door of the original house also was connected with the barn by a plank walk. This barn afterwards was used in connection with the house, in summers for cooking and washing clothes until after the year 1895, and afterwards mostly for keeping wood. The household washing was done in the cellar, and the clothing was then carried out through the cellar door, and along the path around the westerly side of the ell to the clothes yard, easterly of the house. The lot which originally went with the house before the construction of the ell was a little less than sixty feet long upon the street, and nearly fifty-four feet deep from front to rear.

The language of the first clause of the will is as follows: " First, I devise to my wife Ann Plunkett the cottage house and the land 'appertenant' thereto. Being the house I now live in and situate on William street in Fall River. The land begins," etc. (Then follows a description by metes and bounds, which stops at the westerly line of the lot originally bought by him, and which does not include the land under the greater part of the ell.) The lot formerly owned by his wife extended westerly along the street one hundred and twenty-five feet from the line of the lot first bought to Mulberry Street. The third clause of the will is as follows: " Third, I devise to my sons William Plunkett, Joseph Plunkett, Edward Plunkett and John Francis Plunkett the lot of land at the corner of William and Mulberry Streets, which is the land formerly owned by the Blackstone Mnfg. Co. and contains twenty-four & 67-100 rods of land more or less." The quantity of land mentioned in this devise is such as to include the land under the ell, up to the line of the testator's original purchase. In 1897 the testator sold and conveyed this lot at the corner of William and Mulberry Streets to Richard and Catherine I. Golden, except that he made the length of the lot running from Mulberry Street along William Street only, one hundred and two feet, leaving twenty-three

feet between the line thus established and the westerly line of his first purchase, upon which unconveyed portion stood the greater part of the ell and all of the barn. The question is, Where is the westerly line of the house lot devised to the testator's wife ?

It is plain that the description of the appurtenant land by metes and bounds is incorrect, for there can be no doubt that the house and land appurtenant included at least all the land under the house, the ell as well as the older part of the house. It follows with equal certainty that the description of the land mentioned in the third clause, by a reference to its quantity and the source from which he obtained it, is also inaccurate. The intention of the testator that his wife should have the house and the land under it, and the land which properly belonged with it, is too plain to admit of question; and other language in the will must yield to this provision. Inasmuch as the other language that would fix the boundary line, if it stood alone, is erroneous both in the description of the devise to the widow and in that contained in the third clause, we are left to determine as well as we can, where to establish the line which will include the land which is appurtenant to the house, as the testator understood it. As the land next westerly of the ell was always used with the ell as a passageway to the clothes yard, and for a path to the barn, and as the barn was always used with the house, being connected with different parts of it by a path and by a plank walk, it would be too narrow a construction to hold that there was no land appurtenant to the house on the west, outside of the walls of the ell. The land which was retained by the testator when he sold the lot at the corner of William and Mulberry Streets extends only to a line between fifteen and sixteen feet westerly of the line of the ell, and apparently not more than three or four feet westerly of the corner of the barn. The previous use of the property by the testator and his family, together with a sale of the corner lot mentioned in the third clause after the will was made, with a boundary leaving twenty-three feet of the lot to be used as it had been used, and the occupation of the testator afterwards until his death, with no change in his will, are indications that he intended to include in the devise to his wife, not merely the land under the ell, but also a reasonable

quantity westerly of it, which would include the barn, and leave the boundary a straight line from front to rear, as shown in the deed to Richard and Catherine I. Golden.

We are of opinion that the land in controversy was included in the devise to the testator's wife. The ruling requested in favor of the petitioners should have been given, and a decree is to be entered in their favor accordingly.

*So ordered.*