## SELINA FONTAINE *v.* AGNES AMELOTTE.

Worcester, January, 1907.

*Homestead — Devise of " Homestead Estate " — Construction.*

This is a writ of entry to recover possession of a tenement house lot situated at the northwest corner of the original home place of the late Thomas Martin of Spencer; the question at issue being whether the demanded premises passed to the defendant under the second clause of his will by specific devise of the testator's " homestead estate," or passed to the plaintiff and the defendant as co-tenants under the residuary clause of said will.

In 1859 said Martin purchased a tract of land on the corner of Maple and Cherry streets in Spencer, including all of the premises now in controversy, and an adjoining strip on the east subsequently sold off by him in his lifetime. On the property so purchased, said Martin built a house and barn with a woodshed and other outbuildings. About 1876 he purchased an old engine house from the town, moved it on to the northwest corner of the lot, and used it for some five or six years as a workshop. About 1882 he made the workshop over into a two-tenement house which, from that time until his death he rented to various tenants, continuing to occupy the remainder of the property as his home. No fences were ever erected on any of the property, nor was there any demarcation of the tenement house lot from the rest of the estate. A woodshed was erected immediately in the rear of the tenement house for the use of the tenants, and back of that was a larger woodshed used in

connection with his own dwelling house, a part of which, however, the tenants of the tenement house used occasionally for storage purposes. The privies used in connection with the tenement house stood against the barn considerably to the east of what the plaintiff claims as any part of the tenement house lot. Between the tenement house and the dwelling house is a driveway leading back from Maple street to the barn. The tenement house faces Maple street, and has a front door at its extreme northwest corner. Access to the back door is had over said driveway. Said Martin lived in the dwelling house from the time he erected it, shortly after 1859, until his death. His older daughter, the plaintiff, lived with him until her marriage, and the younger daughter, the defendant, with the exception of three years, always lived with her father, together with her husband and children. At the time of his death said Martin had, besides the property on Maple and Cherry streets, certain real estate on Adams street in said Spencer, and personal property to the amount of about $2,600.

By the first clause of his will he gave to the plaintiff $1,000, by the second clause he gave to the defendant " my homestead estate situated on the corner of said Maple and Cherry streets; " together with sundry personal effects, and by the last clause left all of the residue and remainder of his estate equally between his said daughters.

The phrase " homestead " has been considered in a number of decisions: Bacon v. Leonard, 4 Pick. 277; Taylor v. Mixter, 11 Pick. 341, 346; Eliot v. Thatcher, 2 Metcalf 44, note; Perkins v. Jewett, 11 Allen 9; Melcher v. Chase, 105 Mass. 125; Backus v. Chapman, 111 Mass. 386; Frazer v. Weld, 177 Mass. 513; and see also Dudley v. Milton, 176 Mass. 167; Millerick v. Plunkett, 187 Mass. 97. In Taylor v. Mixter the Court suggests that the phrase " homestead " may cover lands that are detached, and yet so intimately connected with the dwelling house as in effect to constitute

a part of the homestead; that the word is not one that has acquired a definite signification in law, and may probably be understood differently in different places. In Eliot *v.* Thatcher the Court says that " homestead " signifies " all his real property in his actual occupation and which was not severed by any real estate belonging to anyone else," meaning " that part of a man's landed property which is about and contiguous to his dwelling house, distinguishing it from outlands." In Perkins *v.* Jewett the testator had a well-known homestead. Subsequently he purchased an adjoining piece of land in the rear of his house lot, but separated by a board fence. This lot was not used by the testator in connection with the old homestead, but was occupied by tenants. The Court says that " the fact of unity of possession and actual occupation in common have been regarded as the most decisive tests. Not that the circumstance that a portion of a well-known and well defined homestead has been occupied temporarily by a tenant would affect the construction of a devise; but the case to which the principle we have stated applies is, where there is the absence of any previous use and occupation of the premises as a homestead at any time. The fact of being under one common inclosure or not would also be a circumstance of some weight." In Melcher *v.* Chase the testator had on his home place, besides his mansion house with outbuildings and garden, two cottages, one occupied by his man servant and the other by his sister for whom the testator had built the house, and with whose support he expressly charged his homestead. It was held that the devise of the homestead included with the mansion property the two cottage lots adjoining, and originally not divided from it by fence or otherwise. In Backus *v.* Chapman the testator had built a new house and removed with his family into it. He enclosed the old house by a fence and rented it to tenants, although he continued to use a part of the ell of the old house, and the well which stood south of

it, in connection with his dwelling house. It was held that he had severed the old house from the homestead.

In Otis v. Smith, 9 Pick. 292, a testator devised certain houses " with all their appurtenances." The Court held " that the outhouses, stable, etc., should pass under the general term appurtenances; that is, we have a right to infer such intent from the use made of them by the testator himself as parcel of his mansion house. But with respect to the land south of the stable covered with a tenement, which has been in the occupation of tenants ever since it was erected, no such intent can be found in the will. Then we must look into the evidence in regard to the occupation; and that is all on one side and wholly uncontradicted. It is, that from the time of the first occupation of the mansion house to the death of the testator, this has been used as a separate and distinct estate, being let to tenants who had no connection with the testator's family, and no privilege in any part of the curtilage of the mansion house. Had it been occupied for the whole or even part of the time by the testator's servants, taking their wages in the rent, or without paying any rent, the case would be different; but treating it as the testator did in his lifetime for more than thirty years, we can see no more reason for supposing that this land and tenement passed by the specific devise of the house and appurtenances, than that of the adjoining house on State street should so pass; the difference being only in the size and value of the buildings."

The rule deducible from these cases seems to be that where the testator has used a given estate as a homestead, the whole of it will be carried by a devise of his homestead, unless some portion has been definitely separated by the testator himself. As said in Aldrich v. Gaskill, mere temporary rental of portions will not sever it. In the case at bar the testator never made any physical severance of the demanded premises. It was originally a part of the homestead,

and was used as such, and although he later changed the use of it, it was never permanently out of his control.

Judgment for tenant.

A. W. Curtis for demandant.

Blackmer, Vaughan & Smith for tenant.