SAMUEL S. WEINREBE, trustee, *vs.* SAMUEL P. COFFMAN, trustee.

Suffolk. October 8, 1970. — November 3, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Real Property,* Deed: construction, property conveyed; Easement. *Equity Pleading and Practice,* Bill, Demurrer. *Words,* "Integral."

A demurrer on the ground that the bill in a suit in equity did not set forth facts entitling the plaintiff to equitable relief was correctly sustained where the bill alleged in substance merely that the plaintiff owned a parcel of land shown on an attached plan and the building thereon, that the defendant owned another parcel shown on the plan which adjoined at its rear the rear of the plaintiff's parcel, that "Integral to" the building on the plaintiff's parcel were certain "subbasements . . . below street level . . . which extended underground beyond the property line between . . . [the two parcels] as set forth in the deeds" of such parcels respectively "to the extent shown" on the plan, and that "it was the intention of" a common predecessor in title of the plaintiff and the defendant to include the sub-basements in the plaintiff's parcel when it conveyed such parcel, whereby the plaintiff acquired the "exclusive right to the ownership and . . . possession of" the sub-basement area; this court affirmed a final decree dismissing the bill, which had sought relief pertaining to acts of the defendant in the sub-basement area on the assumption either that the deeds in the plaintiff's chain of title impliedly conveyed the

sub-basements as a part of the building on the plaintiff's parcel or that the plaintiff acquired in connection with his building an easement by implication over the sub-basements.

BILL IN EQUITY filed in the Superior Court on March 4, 1968.

The suit was heard by *Moynihan, J.*, on demurrer.

*Roland E. Shaine* for the plaintiff.

*Arthur M. Gilman (John S. Leonard* with him) for the defendant.

CUTTER, J. A Superior Court judge sustained a demurrer to an amended bill in equity. The plaintiff appeals from a final decree dismissing the bill.

Attached to the bill as an exhibit is a plan showing the lots hereafter described. The plaintiff owns parcel P-1 on the north side of School Street, with its street frontage at 13 to 15 School Street, Boston, a short distance west of Washington Street, which runs north and south. The defendant owns parcel D on the west side of Washington Street. Parcel D has its street access at 263 to 265 Washington Street. Parcel P-1 and parcel D adjoin each other at the rear of each parcel. The bill alleges essentially these facts and also the matters set out below.

On February 21, 1956, by deed dated December 28, 1954, Post Publishing Company (Post) conveyed parcel P-1, and the buildings thereon, to one Coppola by a deed [1] which described parcel P-1 by metes and bounds. These corresponded with the measurements shown on the plan, with the addition of the words "[o]r however otherwise said premises may be bounded or described and be all or any of said measurements more or less." The specific measurements included only the area shown on the plan as parcel P-1. The measurements did not include the surface (or any part) of parcel P-2, about six feet by twenty-nine feet, constituting a sub-basement area substantially below street level. On May 2, 1963, "one Diab, the then owner by suc-

---

[1] Copies of the deed from Post to Coppola, of the deed from Diab to Weinrebe, and of the deed from the trustees in bankruptcy of Post to Coffman, are set out as exhibits to the amended bill.

cessive conveyances of . . . [p]arcel P–1 (the language of all . . . interim conveyances being substantially identical to that of . . . [the deed to Coppola]), conveyed" parcel P–1 to the plaintiff.   Post remained the owner of parcel D

until March 18, 1958, when there was recorded a deed to the defendant which included parcel D, executed by the trustees

in bankruptcy of Post (see fn. 1). This deed appears to include in parcel D parcel P-2 within its description by metes and bounds, although these are not shown in figures on the plan attached to the bill.

Paragraph 5 of the bill reads,[2] "[A] Integral to . . . '15 School Street' situated on . . . [p]arcel P-1 during the ownership thereof by Post . . . and at all times thereafter until March 1968, were certain [B] sub-basements which were approximately forty-two . . . feet deep below street level, and which extended underground beyond the property line between [p]arcel P-1 and [p]arcel D as set forth in the deeds . . . [of such parcels respectively] to the extent shown on the [p]lan annexed . . . (the extended portion of . . . [the] sub-basements being . . . referred to as '[p]arcel P-2'); [C] it was the intention of . . . Post . . . and each predecessor in title to the plaintiff thereafter, to make conveyance of all of . . . '15 School Street' (that is, [p]arcel P-1 inclusive of [p]arcel P-2), whereby the plaintiff acquired the exclusive right to the ownership and . . . possession of . . . [p]arcel P-2."

After parcel D had been conveyed to the defendant on March 18, 1958, he demolished the buildings on parcel D and used the land as a parking lot until January, 1968. Then the defendant began to excavate parcel D and parcel P-2. The plaintiff gave notice to the defendant of his claims to parcel P-2. The defendant continued the excavation, demolished the underground structures comprising parcel P-2, and commenced construction of a building which "encroaches on [p]arcel P-1 to the full extent of [p]arcel P-2."

The plaintiff seeks a mandatory injunction requiring the removal of the allegedly encroaching structure, restoration of the destroyed sub-basement portion of the building at 15 School Street, and general relief. In the demurrer it is asserted that no cause for proceeding in equity has been

---

[2] The letters in brackets inserted in the text of par. 5 of the bill, as quoted above, permit convenient reference to the language which immediately follows such letters respectively.

stated and that the allegations of par. 5 of the bill "are argumentative, state conclusions of law, and do not specifically set forth facts" enabling the plaintiff to proceed in equity. The plaintiff contends that the allegations of the bill are sufficient to state grounds for equitable relief on either of two bases summarized below.

1. The plaintiff first argues, in effect, that the deed from Post to Coppola (and the subsequent "substantially identical" deeds in the plaintiff's chain of title) must be read in the context of the circumstances in which they respectively were delivered. So read, he says that they must be interpreted as conveying not only parcel P–1 but also the sub-basements constituting parcel P–2, as a part of the building at nos. 13 to 15 School Street. Doubtless, in cases of ambiguity in descriptions, weight may be given to the circumstances in which a conveyance was made, and to physical characteristics of the property transferred, in determining what the parties intended. See *Erickson* v. *Ames*, 264 Mass. 436, 444; *Murphy* v. *Mart Realty of Brockton, Inc.* 348 Mass. 675, 680. See also *Ovans* v. *Castrucci*, 267 Mass. 600, 606; Restatement: Property, § 242; Am. Law of Property, § 12.91. The principle has been applied with respect to deeds or other transfers of buildings. See *Millerick* v. *Plunkett*, 187 Mass. 97, 102–104; *Harvey* v. *Sandwich*, 256 Mass. 379, 384–385; *Ansin* v. *Taylor*, 262 Mass. 159, 162–163; *Labelle* v. *Lafleche*, 289 Mass. 140, 144–145; Tiffany, Real Property (3d ed.) § 990, pp. 90–91. Cf. *Bacon* v. *Kenneson*, 290 Mass. 14, 16–17.

The plaintiff's allegations are indefinite with respect to the relationship between (a) the sub-basements which constitute parcel P–2, and (b) the building (13 to 15 School Street) on parcel P–1. There is no specific allegation in par. 5 of the bill showing whether or how these sub-basements were, or had been, connected or used with the 13 to 15 School Street building. There is (1) no description of the nature or physical characteristics of these sub-basements; (2) no statement concerning their origin and use by Post and its transferees; and (3) no allegation about the knowledge of Post,

its transferees, the users of the School Street building, and others concerning the existence of the sub-basements or their location with respect to the surface of the land above them. See par. 5 at point [B].

Undue reliance cannot be placed upon the allegation that (see par. 5 at point [A]) "[i]ntegral to [3] . . . '15 School Street'" are these sub-basements. Although the term "integral to" implies general unity of use and structure of the sub-basements and the School Street building, par. 5 fails to set forth any basic facts which might lead to the conclusion that such unity exists. Such a general conclusion need not be regarded as admitted by demurrer. See *Stockus* v. *Boston Housing Authy.* 304 Mass. 507, 510–511; *Moskow* v. *Boston Redev. Authy.* 349 Mass. 553, 563–564. The statement (see par. 5 at point [C]) concerning "the intention" of Post and its successors in title is similarly defective in specificity.

On demurrer no intendment will be made in favor of the allegations of a bill, and ambiguities must be construed against the plaintiff. See *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 149. In the light of these principles, we conclude that par. 5 of the bill does not set out in "clear, direct, and unequivocal" fashion facts entitling the plaintiff to relief in equity in the face of a demurrer raising the issue of undue generality in the bill. See *North Station Wine Co. Inc.* v. *United Liquors, Ltd.* 323 Mass. 48, 51.

2. The plaintiff also argues that the bill sets forth facts showing that by his deed to parcel P–1, he also acquired in connection with the School Street building an easement by implication over the sub-basements constituting parcel P–2. See *Hurley* v. *Guzzi,* 328 Mass. 293, 295–296. The allegations of the bill, particularly par. 5, inadequately state basic facts, as opposed to somewhat general conclusions, sufficient to constitute a case for equitable relief on this theory. Much

---

[3] The word "integral" implies the concept of being "essential to completeness: organically joined or linked." See Webster's Third New Intl. Dictionary, p. 1173. See also New English Dictionary, Vol. V, pp. 366–367; Century Dictionary, Vol. IV, pp. 3130–3131.

the same reasons are applicable as those already outlined in part 1 of this opinion in discussing the plaintiff's first theory of his case.

3. The demurrer was correctly sustained.

*Interlocutory decree affirmed.*
*Final decree affirmed with*
*costs of appeal.*