DANIEL ALDRICH & wife *vs.* ALBERT GASKILL.

A devise of "the farm whereon I now live, consisting of about one hundred and thirty acres, with all the buildings thereon," may pass a tract of land not immediately adjacent to that on which the testator lived, although the two exceed one hundred and thirty acres; the evidence showing that said lot was once a part of the testator's farm, and not showing that it had ever been severed from it.

WRIT OF ENTRY. The case was submitted to this court on an agreed statement of evidence, with leave for the court to draw such conclusions of fact, as a jury might justly draw from the same. The testimony was reported at much length, but from the nature of the question submitted, a question of fact and intention simply, a full report of it here does not seem necessary. The most material point in the case may be gathered from the opinion.

*G. F. Farley*, for the demandants.

*B. F. Thomas*, for the tenant.

SHAW, C. J. This is a real action brought to recover an eighth part of a tract of land in Blackstone. The demandants claim the one eighth in right of the wife, as sister, and

one of the eight heirs at law of Peter Gaskill, distinguished in the agreed statement of facts as Peter Gaskill, junior, who was a bachelor, and lived many years on the Gaskill farm with his father, Peter Gaskill, senior, who died but a few months before Peter, junior. Peter, senior, devised all his real estate, except a detached parcel, not affecting the present case, to Peter, junior, and it is agreed that Peter, junior, died seised and possessed of the demanded premises. Peter, junior, during all the latter years of his father's life, took charge of, and managed the estate; he and his father were taxed for it, and by the consent of his father in his lifetime, Peter, junior, had, at his own expense, erected some buildings on the estate, not adapted to farming purposes, but for renting, such as a mechanic's shop, an odd-fellow's hall, and the like. Both parties thus claiming under Peter Gaskill, junior, it is conceded that the sister, the female demandant, is, by inheritance, entitled to the eighth part claimed, if, in regard to the estate in question, Peter, junior, died intestate; but the tenant claims, under a will, which has been duly proved, and by which he insists that the estate was devised to himself and his cousin, David Gaskill. They two had made a division of the estate devised, by which the land in controversy was allotted to the tenant in severalty. The devise is as follows: " I will and bequeathe unto my nephews, Albert and David Gaskill, sons of Lebbeus and Elisha Gaskill, the farm on which I now live, consisting of about one hundred and thirty acres, with all the buildings thereon; and I appoint the said Albert Gaskill executor of this my last will and testament." This is the whole of the will; it contains no other bequest whatever, and no residuary clause, and the will appears to have been made on the day of the testator's decease. ·

The only question is, whether the land in question passed by this devise. This must be ascertained by the intent of the testator, to be ascertained from all the terms he has used, to be interpreted by the light thrown upon them by all the surrounding circumstances. In construing a devise, expressed in brief descriptive words like the present, we are almost necessarily constrained to look beyond the will, to

resort to evidence *aliunde* to ascertain what the description embraces. The will itself calls for, and requires such evidence, in order to apply such a description to the estate intended. It may be that when so applied, there may be only one dwelling-house, one warehouse, or mill or wharf, which will answer the description, and no ambiguity remains. But if the evidence still leaves it in doubt, what was intended, it is a latent ambiguity, and then, by the established rules of law, evidence *aliunde,* including parol evidence, is admissible, showing the circumstances under which the estate was devised, how it was used, held, and occupied by the testator, the manner in which he was accustomed to regard it and speak of it.

Much evidence of this sort was introduced in the present case, and submitted to the court to draw all such inferences from it, as a jury would be warranted and required to draw, upon the just weight of the evidence. Upon a full consideration of this evidence, the court are of opinion that the estate in question did pass by the devise.

The devise was of " the farm whereon I now live, consisting of about 150 acres, and all the buildings thereon." The testator was then sole occupier of the house, in which he had long resided with his father, and had succeeded, by his father's will, to the title, and was owner of all the real estate, including the premises in controversy. It is conceded that the estate in question was once part of the farm of Peter Gaskill, senior, and the principal circumstance supposed to distinguish this from the residue, was, that two small lots had been sold off, for house lots, lying between the main portion of the farm, on which the dwelling-house stood, and the parcel in question, which was nearer the village or business part of the town, and which the Gaskills, senior and junior, had formerly proposed to sell off for house lots. It is not easy to make the case quite intelligible without the plan; but it is not very material. The fact was that, by this sale, the part in controversy, formerly an admitted part of the farm, ceased to be contiguous or adjoining to the main farm on which the buildings stood; some buildings were erected on it, and portions of

it, as of other parts of the farm, were occasionally let to tenants, for years or at will, and rent received from them, and, further, that in fact the farm, by admeasurement, exceeded 130. acres.

Having been once a part of the farm, we think that there is no decisive act showing the intention either of the father or son to sever it from the farm. The word "farm" is one of large import both in England and in America, though, perhaps, somewhat different in the two countries. In the former, it commonly implies estate leased; but as to the term, it is said to be a collective word, consisting of diverse things gathered into one, as a messuage, land, meadow, pasture, wood, common, &c. In this country, a man is generally the owner of his farm, and it is a parcel of land used, occupied, managed, and controlled by one proprietor. In the case of *Taylor* v. *Mixter*, 11 Pick. 347, it was strongly intimated, though it did not become necessary to decide the point, that the term " homestead " might include land not contiguous to the dwelling-house, if intimately connected and used with it, and also that " homestead farm " might have a broader signification than the word " homestead " used alone. The letting of small portions of it, for the season or for short terms, did not sever it; nor did the intention to sell it for house lots, not executed.

Nor is it material, in our opinion, that the farm exceeded the number of acres estimated by the testator. The subject of the devise was the farm, and whether it exceeded or fell short of the estimated quantity, was immaterial, otherwise than as it might tend to show the intent of the testator. *Bacon* v. *Leonard*, 4 Pick. 277. But there is evidence tending to show that after his father's death, the testator and his brother looked over the deeds, by which the farm had been acquired, and estimated it at 130 acres.

The survey, testified of by Luther Warfield, as made by Davenport in 1849, is of no weight; it does not appear for what purpose, or at whose instance, it was made. The land in controversy had been previously surveyed, separately, and the probability is, that the surveyor was employed so to survey the

residue for some purpose connected with this controversy. It was made several years after the death of the testator. But we forbear pursuing this evidence further, though there are many other circumstances bearing on the case, which have not escaped our attention. *Judgment for the tenant.*