SYLVESTER L. BACKUS & others *vs.* JOHN W. CHAPMAN.

J. S. owned a parcel of land; on the westerly part of which was the house in which he lived, with the land about it inclosed by a fence, a well inside the inclosure, and a barn. He built a new house on the easterly part, moved into it, occupied the barn and used the well as before, occupied part of the L of the old house, as he had for many years, as a carpenter's shop, but leased the old house and the inclosed land about it: six years afterwards he made his will and died, devising his "homestead" to his wife. *Held*, in a writ of entry to recover the premises, that the above facts would warrant a finding that the old house and the inclosed land about it did not pass under the devise.

In a writ of entry by two tenants in common against the third, the demandants may recover damages for mesne rents and profits; and the tenant, compensation for improvements.

WRIT OF ENTRY by Sylvester L. Backus, Daniel H. Backus, Joseph H. Backus, Tryphosa B. Fassett and Alvarez Fassett, to recover land in Barnstable. Plea, *nul disseisin.* The tenant filed a claim for improvements. At the trial in the Superior Court, before *Brigham*, C. J., the following facts appeared:

Joseph Backus, for many years previous to 1846, occupied as a homestead a parcel of land in Barnstable. The demanded premises were the westerly part of this parcel. There was a house on the westerly part of the parcel. About 1846 he built a new house on the easterly part of the parcel, and removed with his family from the old house, where he had always before resided, to the new house, and there resided at the time of his death, in December 1852. During his residence in the new house, he had each year cultivated as a garden all of the demanded premises, except that portion immediately surrounding the old house, and inclosed by a fence. He also continued to occupy the barn, as he had done in former years, for keeping his cow and hay; and continued as formerly to use a well south of the old house, never constructing one upon the easterly part, and having no other source from which to procure water for his domestic pur-

poses. He also continued to use, as he had for many years, about one half of the L part of the old house, extending westward, for a carpenter's shop ; and from 1846 to his decease leased the old house and the land inclosed therewith, to different tenants." The said portion inclosed by a fence was marked A, B, C, D, E, F, on a plan which was made part of the case. The well was within this inclosure. The barn stood on the edge of it.

Joseph Backus, by a will, made a few days before his death, gave to his wife, Sarah D. Backus, and her heirs, " my homestead, which I now own." The residue of his estate he gave to his wife and his two sons, Sylvester and George.

The demandants held all the interest of the sons in the estate of Joseph Backus ; the tenant held all the interest of the widow.

The demandants contended that the demanded premises were, by the acts of Joseph Backus, severed from the homestead, and ceased to be a part thereof.

The judge, against the objection of the demandants, excluded evidence of the rents and profits received by the tenant ; and, against the objection of the tenant, excluded evidence of improvements made by him.

The judge ruled that the lot marked A, B, C, D, E, F, did not pass under the devise of the homestead, and that the demandants were entitled to two undivided third parts thereof. Both parties alleged exceptions.

*H. P. Harriman*, for the demandants.

*J. M. Day*, for the tenant.

WELLS, J. What constituted the "homestead" of Joseph Backus, the testator, at the time he made his will, its extent and boundaries, was an inquiry mainly of fact. No question of law is presented to us, unless it be whether the facts stated would warrant the conclusion arrived at by the judge who heard the case. We think they would ; and it is not open to us to revise that conclusion upon the weight of the considerations which affect it as a question of fact. Trial by jury having been waived, the findings of the judge, in the court below, upon all facts and all inferences of fact, are conclusive, as if determined by a verdict.

The action is maintainable by several tenants in common jointly, for recovery of an undivided portion of the premises demanded. Gen. Sts. *c.* 134, §§ 9, 10. The right to mesne profits is incident to the recovery of judgment. Gen. Sts. *c.* 134, § 13. The ouster being admitted by the plea, or established by the proof, the fact that the tenant holds the title to an undivided share of the land, as tenant in common with the demandants, is no obstacle to recovery of judgment, both of possession and for damages or mesne profits. *Silloway* v. *Brown*, 12 Allen, 30. The tenant is also entitled to have the value of his improvements ascertained, and to recover compensation therefor. Gen. Sts. *c.* 134, §§ 18, 19.

Such recovery for mesne profits and compensation for improvements, between tenants in common, is allowed even in process for partition, when the respondent denies the right and title of the plaintiff or petitioner to any part of the premises, and claims the same as his own estate in fee. Gen. Sts. *c.* 136, § 46.

The exceptions to the ruling of the court below, that the demandants were entitled to recover judgment for possession of two undivided thirds of the parcel of land described upon the plan as indicated by the letters A, B, C, D, E, F, are accordingly overruled.

The exceptions to the ruling that no recovery could be had between these parties for rents and profits, and no compensation for improvements, and rejecting the evidence to prove the same, offered by each party respectively, are sustained ; and the case is to stand for further hearing upon those claims.

*Exceptions sustained.*