In re Gary E. EDWARDS, Debtor.

No. 01–16354–JNF.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 5, 2002.

C. Thomas Faust, North Attleboro, MA, for Lillian & Richard Vargas.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Creditor's [sic] Objection to Debtor's Claim of Exemption Debtor's Interest in Certain Real Estate" [sic] filed by Lillian and Richard Vargas (the "Creditors" or the "Vargases"). The Debtor filed a Response to the Objection, and this Court held an evidentiary hearing on June 5, 2002 at which the Debtor testified and 16 exhibits were accepted in evidence.[1] The issue presented is whether the Debtor, Gary E. Edwards (the "Debtor"), may claim, as exempt, his ownership interest in a parcel of real estate upon which his residence is located together with his ownership interest in a contiguous, vacant parcel of land which he and his spouse acquired separately and subsequent to purchase of the parcel on which they maintain their residence. For the reasons stated below, and based upon the following findings of fact and conclusions of law, the Court overrules the Creditors' Objection and finds that the Debtor properly claimed a homestead exemption in the contiguous parcels.

### II. FACTS

The Debtor filed a voluntary Chapter 7 petition on August 13, 2001. He is a licensed builder with experience in building residential homes in various towns in Massachusetts. (Tr. at 17).

On Schedule A—Real Property, the Debtor listed his ownership interest in a

Roger Stanford, New Bedford, MA, for Debtor.

1. On November 14, 2001 the Debtor filed a Motion to Avoid Judicial Lien, to which Lillian and Richard Vargas objected. The hearing with respect to that Motion has been continued generally, pending the determination of the Creditors' Objection to Debtor's Claim of Exemption.

"single family house and about 2 acres of land," located at 30 Pine Grove Street, Fairhaven, Massachusetts. He indicated that the parcels together have a current market value of $160,000.00. The Debtor holds the property as a tenant by the entirety with his non-debtor spouse, Betty Ann Edwards. On Schedule C—Property Claimed as Exempt, the Debtor claimed an exemption under Mass. Gen. Laws ch. 188, § 1 (West 2001) in both the house and the 2 acres of land. On Schedule D—Creditors Holding Secured Claims, the Debtor listed Citizens Bank as the holder of first and second mortgages covering both parcels in the total amount of $96,000.00. Thus, on Schedule C, the Debtor claimed $32,000.00 as the amount of his exemption, an amount which represents a one-half share of the equity in the property. The Debtor, however, filed an Amended Schedule C on February 25, 2002 in which he listed the value of his claimed exemption at $300,000.00.

On September 8, 1999, the Creditors recorded a Writ of Attachment in the amount of $150,000.00. Approximately twenty months later and approximately three months before he filed his Chapter 7 petition, the Debtor, on May 18, 2001, recorded a declaration of homestead claiming a homestead estate in both parcels of land. The declaration terminated any prior declarations pertaining to the two parcels. *See* Massachusetts Gen. Laws Ann. ch. 188, § 2 ("The acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate.").

The Debtor and his spouse, Betty Ann, purchased their first parcel of land on Pine Grove Street, known and numbered as 30 Pine Grove Street, in May of 1972. They built a house on this lot and have resided there ever since (the "residential parcel"). Seven years later, in May of 1979, the Debtor and his spouse purchased an additional vacant parcel adjacent to the residential parcel (the "adjacent parcel") for $6,000.00. (Tr. at 18). The adjacent parcel consists of 84,840 square feet—a little less than two acres. It has between 600 and 650 feet of frontage on Pine Grove Street (*Id.* at 15).

The Debtor testified about his acquisition of the adjacent parcel. He stated that he was approached by a neighbor who informed him that the vacant parcel of land adjacent to his property was available for purchase from the Fairhaven Social Club. (*Id.* at 18). The Debtor further testified that he "didn't have any intention of using it," and that it was "just going to be for privacy more than anything else." (*Id.*) The Debtor explained that he lives on a dead-end street, that there are no houses on his side of the street except his own (*id.*), and that once he acquired the adjacent parcel he desired to keep it "so no one else can do anything with it if they ever tried to." (*Id.* at 26).

The Debtor testified that he and his wife have rejected a number of offers over the years to purchase the adjacent parcel, and they have refused to grant a sewer easement to various developers. (*Id.* at 19–20). According to the Debtor, when he first acquired the adjacent parcel, his daughters and their friends played there and later he fenced a section of the parcel for a dog run. (*Id.* at 11). The fence, according to the Debtor, "runs along the back into the woods for ... maybe a couple hundred feet, 100 feet or so." (*Id.*). In addition, as a result of hurricane damage, the Debtor had to clear a portion of his land, creating a lawn that extended onto the adjacent parcel for about 60 or 70 feet. (*Id.* at 11–12). The Debtor testified that the mowed area contains a shed and a swing set. (*Id.*). Additionally, he indicated that there is a wildflower garden and a bird bath in front of the fenced dog run. (*Id.* at 12).

Nevertheless, the Debtor admitted that the lawn did not intrude significantly on the adjacent parcel. (*Id.* at 13). The Debtor has left the remainder of the adjacent parcel wooded and vacant. (Exs. 15 and 16).

In 1991, eleven years after the Debtor and his spouse acquired the adjacent parcel, the Board of Public Works of the Town of Fairhaven assessed a betterment against the Debtor's real property in the total sum of $15,303.70. (Ex. 12). The share of the assessment allocated to the adjacent parcel was $12,890.50 (*Id.*).

On January 8, 1993, the Debtor wrote a letter to the Fairhaven Conservation Commission requesting a determination that the adjacent parcel is wetland. (Ex. 13). The Debtor stated the following in his letter:

> In late November of 1992, I spoke with Mr. Mendoza of the town Building Dept. concerning the procedure of obtaining a building permit on the above referenced location. I discussed with him the strong possibility of the land being in a wetland area and what I should do to make this determination. He suggested that I hire a botanist to make a study of the various plant species and prepare a report based on his findings.
>
> I have attached a copy of Sabatia Inc's [sic] report for your inspection and hereby request that a Positive #1 Determination be made on this parcel.

(*Id.*; Tr. at 23). According to Sabatia, Inc., the botanist the Debtor employed to inspect the adjacent parcel, the land is about 55% wetland. (Ex. 13; Tr. at 23).[2] The Debtor requested a wetland determination from the Conservation Commission because he believed that such a determi-

nation would "relieve" him of "the betterment tax." (Tr. at 23). The Debtor, however, later withdrew his application because a commissioner told him that "the land would forever be deemed as wetland." (*Id.* at 23–24). The Debtor testified that he had second thoughts about obtaining a wetland determination because he "thought maybe there's [sic] a piece I could get so I could build a house for my daughter on it." (*Id.* at 24). Additionally, the Debtor testified that he did not give much thought to the value of the adjacent parcel, although he wanted to keep his options open. He added that he was not in a position to do anything with the property anyway. (*Id.* at 29). Nevertheless, the Debtor admitted that when he declared a homestead on the property it was his intention, at some unspecified point in time, to give the adjacent parcel to his daughter when she had enough money to build a house. (*Id.* at 32). The Debtor's daughter is now 33 years old. (*Id.*).

## III. POSITION OF THE PARTIES

### A. *The Creditors*

The Creditors do not object to the Debtor's claim of exemption in the residential parcel; they limit their objection to the Debtor's claim of the homestead exemption in the adjacent parcel. The Creditors maintain that in order to claim the homestead exemption in the adjacent parcel the Debtor must either occupy or intend to occupy the property as his principal residence. They assert that the Debtor failed to meet these requirements for a homestead exemption in the adjacent parcel un-

---

2. In a letter dated December 2, 1992 to the Debtor, the botanist, Mario DiGregorio, stated "[y]our plot yielded a WSI [Wetland Site Index] of .5535, a *statistically significant figure* indicating the site to consist of a vegetated wetland, i.e. a wooded deciduous swamp...." (Ex. 13).

der Massachusetts law. (Joint Pretrial Memorandum at 4).

The Creditors argue that the adjacent parcel should be viewed as a separate piece of land and not simply as part of the residential parcel. (Creditors' Post Hearing Brief at 8–9). Citing *In re Fanaras*, 263 B.R. 655 (Bankr.D.Mass.2001), they maintain that the two parcels do not merge into a single homestead just because they are adjacent to one another. The Creditors assert that the Debtor did not make any attempt to incorporate or combine the adjacent parcel with his residential parcel (Creditors Post Hearing Brief at 9), and, therefore, the two parcels should not be viewed as one for the purpose of the homestead exemption. They point out that the Debtor made only occasional use of the adjacent parcel and failed to occupy it in any meaningful sense. According to the Creditors, "[t]here are no outbuildings erected, no paved areas and no areas dedicated to frequent and common household uses." (*Id.* at 12). Moreover, the Creditors contend that "the assessor's records do not reflect any significant improvements" to the adjacent parcel and that the examination of the Debtor did not reveal any such improvements. (*Id.* at 2).

With respect to the Debtor's intention to occupy the adjacent parcel as his principal residence, the Creditors maintain that he did not purchase the adjacent lot in order to use it as his residence, but as investment property. (Joint Pretrial Memorandum at 4). They point to the Debtor's experience as a land surveyor and as a licensed contractor at the time he purchased the adjacent parcel to support the inference that the Debtor intended and intends to build upon the adjacent parcel. (Creditors' Post Hearing Brief at 2–3; Joint Pretrial Memorandum at 3). The Creditors emphasize that the adjacent par-

cel is serviced by public water and sewer, which enhances its suitability for subdivision for building purposes (Creditors' Post Hearing Brief at 3), that the adjacent parcel has never been used by the Debtor as his residence and has been kept vacant for the purpose of development, and that the Debtor explored obtaining a building permit as noted in his application to the Town of Fairhaven for a wetlands determination. (*Id.* at 11). The Creditors contend that because of his extensive real estate background the Debtor knows the value of the adjacent parcel as a buildable lot. (*Id.* at 3). The Creditors also contend that the Debtor's withdrawal of his application for a wetland determination strongly suggests the lack of an intention on his part to occupy the property as his residence. (*Id.*). Implying that it would be logical for the Debtor to follow through with the wetland determination to reduce the betterment assessment, the Creditors argue that the withdrawal of the application indicates that the Debtor was and is more concerned with the investment value of his property than protecting his privacy. (*Id.*). Furthermore, the Creditors argue that the Debtor's stated intention to give the adjacent parcel to his adult daughter is inconsistent with the purpose and intention of preservation of family home set forth in the Massachusetts homestead statute. (*Id.* at 10). The Creditors also maintain that the homestead exemption was not intended to preserve assets for a debtor's adult children at the expense of creditors. (*Id.*).

Moreover, the Vargases contend that the Massachusetts homestead statute was designed for the preservation of the "home," rather than "land and buildings," noting that the statute contains three references to the "home" and only one reference to "land and buildings." (*Id.* at 5). The Creditors further argue that the purpose of the homestead statute is social

one—"not to cast a homeowner into abject penury," and that in this case that purpose is not satisfied by permitting the Debtor to claim a homestead for both the residential and adjacent parcels. (*Id.* at 7).

The Creditors also distinguish the cases cited by the Debtor on the grounds that Massachusetts in 1800's was an agrarian society and, consequently, if early cases allowed separate parcels of land to be included in the homestead estate, it was because such parcels were used as farms, or in connection with farms, and were necessary to provide sustenance to the householder and his family, a policy consistent with the purpose of homestead law in effect at the time. (*Id.*). The Creditors argue that, because of that situation, a category of "homestead farm" existed in case law from the 1800's, separate and distinct from a "homestead." (*Id.* at 6–7). They maintain that the instant case is different from those cases because the Debtor did not and does not use the adjacent land as, or in connection with, a farm, and the adjacent parcel is unnecessary for his and his family's sustenance. (*Id.* at 7). Thus, according to the Creditors, the definition of a "homestead farm" should not be applied in the instant case, and this Court should define the Debtor's homestead estate with reference to the concept of "curtilage." (*Id.* at 9). The Creditors supply the following definition of the curtilage, which they derive from cases from other states: "The curtilage of a dwelling house is a space, necessary and convenient and habitually used for the family purposes, and the carrying on of domestic employments. It includes the garden, if there be one, and it need not be separated from other lands by a fence." (*Id.*) (Citations omitted).

### B. *The Debtor*

The Debtor states that he validly declared his homestead, and his declaration of homestead protects the residential parcel as well as the adjacent parcel. (Debtor's Post Hearing Memorandum at 2–3). He contends that it is irrelevant that the property was acquired at separate times and by separate deeds. (*Id.* at 3). He further states that pursuant to Mass. Gen. Laws ch. 188, § 1 he is permitted to claim a homestead estate in "land and buildings thereon," the only limitation being that the value of the homestead cannot exceed $300,000.00. (*Id.* at 4). The Debtor argues, in essence, that this Court should treat his two parcels as one for the purpose of the homestead exemption analysis.

Secondly, the Debtor urges this Court to reject the Creditors' "curtilage" theory. He contends that it would lead to an absurd result, opening floodgates to objections to exemptions. In his view, if debtors were to claim exemptions in large amounts of land surrounding their residence, there will be constant scrutiny by trustees and creditors and endless battles as to how far the homestead should extend. (*Id.*). Additionally, the Debtor cites a number of cases from both Massachusetts state courts and bankruptcy courts that he maintains are inconsistent with the Creditor's proposed "curtilage" theory. (*Id.* at 5).

Thirdly, the Debtor submits that because he uses the adjacent parcel to maintain his privacy, and pledged it, together with the residential parcel, as collateral for the first and second mortgages to Citizens Bank, the adjacent parcel must be considered part of his homestead. (*Id.*). Finally, the Debtor relies on *Dwyer v. Cempellin*, 424 Mass. 26, 673 N.E.2d 863 (1996), for the proposition that if there are any doubts about the extent of homestead such doubts must be construed in favor of the Debtor. (Debtor's Post Hearing Memorandum, at 3–4).

## IV. DISCUSSION

### A. *Applicable Legal Principles*

 A debtor's claim of an exemption in real estate owned as a tenant by the entirety is governed by state or local law that is applicable on the date of the filing of the petition. *See* 11 U.S.C. § 522(b)(2)(A). Pursuant to Fed. R. Bankr.P. 4003(c), the burden of proving that an exemption is not properly claimed is on the party objecting to the claimed exemption. In other words, the burden is on the objecting party to establish that the debtor either failed to create a valid estate of homestead, or, if such estate was created, that it no longer existed at the time of the filing of the bankruptcy case.

 Under Massachusetts law,

An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence.

Mass. Gen. Laws. Ann. ch. 188, § 1. The statute contains the explicit requirement that in order to claim an estate of homestead in land and buildings the debtor must either occupy *or* intend to occupy the property as the principal residence.

 As a matter of statutory construction, if there are any doubts as to the interpretation of the law with respect to a determination of the extent of the homestead estate such doubts must be resolved in favor of the debtor pursuant to the policy formulated by the Supreme Judicial Court in *Dwyer v. Cempellin*, 424 Mass. 26, 673 N.E.2d 863 (1996). The Supreme Judicial Court of Massachusetts has announced the policy underlying the homestead exemption as follows:

Homestead laws are based on a public policy which recognizes the value of securing to householders a home for the family regardless of the householder's financial condition. "The preservation of the home is of paramount importance because there the family may be sheltered and preserved." "Public policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home."

424 Mass. at 29, 673 N.E.2d at 866 (citation omitted).

 The extent of the homestead estate in Massachusetts is not limited to the particular area of the residence actually occupied by the family. Thus, where the homestead in question is occupied by multiple persons or leased in part to individuals, courts tend to allow the estate of homestead in the entire residence. *See In re Brizida*, 276 B.R. 316 (Bankr.D.Mass. 2002); and *In re Kewriga*, No. 01–44262, Slip op. (Bankr.D.Mass. October 29, 2001). *See also Pratt v. Pratt*, 161 Mass. 276, 37 N.E. 435 (1894); *Mercier v. Chace*, 93 Mass. 194, 1865 WL 3260 (1865); and *Lazell v. Lazell*, 90 Mass. 575, 1864 WL 3392 (1864). This line of cases is consistent with the statute's description of the homestead in terms of monetary value rather than size.

To resolve the issue of whether the Debtor's homestead may comprise the residential and adjacent parcels, this Court, as in *Brizada*, must examine decisions from the 1800's, as there are no recent Massachusetts decisions that provide specific guidance as to the construction of the homestead statute, other than the now familiar precept of liberal construction to comport with the "beneficent spirit of protecting the family home." *See Cempellin*, 424 Mass. at 29, 673 N.E.2d at 866. In

determining the actual physical extent of the homestead, courts adopt a facts and circumstances approach. Thus, in *Backus v. Chapman*, 111 Mass. 386, 1873 WL 8882 (1873), the court stated "[w]hat constituted the 'homestead' of . . . the testator . . . at the time he made his will, its extent and boundaries, was an inquiry mainly of fact." 111 Mass. 386, 1873 WL 8882 at *3.

In *Backus*, the court held that a testator who devised his "homestead" to his spouse did not devise all his land holdings. The court found that the testator had severed a parcel of land from his homestead when he had moved from an old house located on the westerly part of his land to a newly constructed house on the easterly part of the same land. The testator rented out the old house, but continued to use a portion of the old house as a carpenter's shop, and he continued to use the barn and the well in the same manner he did before he moved.

■ Thus, where the property claimed as a homestead consists of two separate parcels, the courts, as in *Backus*, look at the use of the second parcel because the Massachusetts homestead statute does not prohibit the principal residence of a debtor from consisting of several separate parcels of land; rather it requires that the second parcel or additional parcels *actually* be used and occupied as part of the principal residence, or in connection with the principal residence. *See Perkins v. Jewett*, 93 Mass. 9, 1865 WL 3217 (1865); *Adams v. Jenkins*, 82 Mass. 146, 1860 WL 6964 (1860); *Aldrich v. Gaskill*, 64 Mass. 155, 1852 WL 4632 (1852); and *Taylor v. Mixter*, 28 Mass. 341, 1831 WL 2697 (1831).

For example, in *Perkins*, the testator acquired a house lot in 1825, erected a house and outbuildings on it, and resided there until his death in 1859. 1865 WL 3217 at *2. In 1844, the testator acquired an adjoining piece of land in the rear of his house lot which fronted upon another street. *Id.* The court held that the later-acquired, adjoining lot was not embraced in the devise of the testator's homestead,[3] noting that "[i]n deciding upon the particular parcel of land embraced in the devise, we are to refer to external objects and facts existing *aliunde.*" *Id.*[4] The court found that the lot in question, a portion of which had been sold by the testator and which adjoined the lot acquired in 1825, was separated by a board fence, had always been separated, and was occupied by tenants who paid rent and used it for a garden and a wood-yard. *Id.* at *2. The court indicated that evidence showed that the testator bought the lot in 1844 for the purpose of having a passage to the back of his house lot, but neither he nor his family used it for that purpose. *Id.* The court also found that there was evidence that the testator "had refused to sell the lot, declaring that he had bought it for the benefit of his front lot and for his own convenience, and to annex it to his home lot" *id.*, but that "there was no evidence that he ever called it his homestead, or spoke of it as a part of his homestead." *Id.* In concluding that the later acquired parcel was not part of the testator's homestead, the court reasoned as follows:

In deciding whether this lot thus purchased in 1844 was in fact attached to the homestead, so as to be parcel thereof, the fact of *unity of possession and actual occupation in common with the*

---

**3.** The relevant part of the devise in question was as follows: "Also my dwelling-house, outbuildings and house lot constituting my homestead estate." 93 Mass. 9, 1865 WL 3217, *2.

**4.** In other words, the court accepted extrinsic evidence to interpret the language of the devise.

*former estate* have been regarded as the most decisive tests. When these have existed, great latitude of construction has been permitted, to carry out the supposed intention of the testator to embrace as a part of his devise the land newly attached to his old homestead. Occupation or non-occupation of the newly purchased lot by the owner of the old homestead in connection therewith must be considered as a most important element, upon the question whether it ever became a part of the homestead. *Id.* (citations omitted) (emphasis supplied). The court further concluded that "[t]he difficulty in sustaining the claim in behalf of the demandant is, that nothing was ever done from the time of the purchase of this lot to the death of the testator, a period of fifteen years, in the least indicative of an annexation of this parcel to the homestead lot, as parcel thereof." *Id.* at *3.

In *Adams v. Jenkins*, 82 Mass. 146, 1860 WL 6964 (1860), the owner purchased his first lot, which he used as a farm, in 1834. Fourteen years later, in 1848, he bought an additional tract of land located two and a half miles from his farm lot. Evidence showed that the owner used the second lot "in connection with his farm as a pasture for cattle of himself and others." 1860 WL 6964 at *2. The owner subsequently pledged both parcels as security for a mortgage. The court disallowed the owner's claim to an exemption in the later-acquired lot as part of his homestead, reasoning that the facts were insufficient to show that the second parcel was used and occupied as part of the homestead of the mortgagor. *Id.* at *3. The court emphasized that there were insufficient facts to show that the second parcel was "used and occupied as part of the homestead of the mortgagor." *Id.*

In *Taylor v. Mixter*, the court was required to decide the extent of a tenant's attachment of a debtor's homestead. According to the court, "[t]he officer returned upon the tenant's writ, that 'he had attached all the right, title and interest of . . . the debtor, to his homestead on which he now dwells, together with all the land thereto belonging, lying in Enfield in said countly; also, all the right and interest which said [debtor] has to any lands lying in Enfield aforesaid.'" *Id.* at *4. The demandant challenged the attachment because "the lot in question was no part of the homestead or of the lands belonging thereto, and so was not within the description of the lands mentioned in the first branch of the return. . . ." *Id.* The court refused to give an opinion as to whether the lot in question could be deemed a part of the homestead, deciding the case on alternative grounds. Nevertheless, in *dicta*, it pointed out the following:

> . . . "homestead farm" may have a broader signification than homestead. Perhaps it would be putting too narrow a construction upon the term to say . . . that it must be the dwellinghouse or land actually contiguous to it, or to the land on which it stands. *It may be detached and yet be so intimately connected with the dwellinghouse as in effect to constitute part of it.*

*Id.* (emphasis supplied).

The court in *Aldrich v. Gaskill*, 64 Mass. 155, 1852 WL 4632 (1852), relied upon the *dicta* in *Taylor* in holding that a devise of "the farm whereon I now live" may pass a tract of land not immediately adjacent to that, on which the testator lived. The *Aldrich* court stated that, in *Taylor*, "[i]t was strongly intimated, though it did not become necessary to decide the point, that the term 'homestead' might include land not contiguous to the dwelling-house, if intimately connected and used with it, and also that 'homestead farm' might have broader signification than the word 'home-

stead' used alone." 1852 WL 4632 at *2. The court added that "[t]he letting of small portions of it, for the season or for short terms, did not sever it; nor did the intention to sell it for house lots, not executed." *Id.*

The foregoing review of applicable Massachusetts case law does not establish any categorical rule as to the kind or extent of use and occupancy necessary or sufficient to claim a distinct parcel of land as part of a homestead. Certainly, if any portion of land or buildings is used to generate income, that fact alone does not defeat the claim of homestead, as long as such property is also the debtor's primary residence, and such income is consistent with the policy of homestead exemption law to provide support for the family to prevent it from becoming public charge. *See Shamban v. Masidlover,* 429 Mass. 50, 53, 705 N.E.2d 1136, 1138 (1999). *See also Brizida,* 276 B.R. at 322. Cases such as *Backus* and *Perkins* establish that the facts and circumstances of each case will determine whether a debtor occupies or intends to occupy property for purposes of the homestead law. Moreover, the case law lends no credence to the Creditors' arguments that an additional parcel of land can only be claimed as homestead if it is used as a family farm, or that the homestead should be defined as "curtilage."

B. *Analysis*

The parties' dispute over whether the two parcels should be viewed as one property, namely, a house with two acres of land, or as two separate parcels of real estate purchased at separate times by separate deeds, is important but not dispositive of the validity of the homestead comprising both parcels because the Massachusetts homestead statute does not limit the size of the property that may be claimed as exempt. *See Backus v. Chap-*

*man,* 111 Mass. 386, 1873 WL 8882 (1873), and *Perkins v. Jewett,* 93 Mass. 9, 1865 WL 3217 (1865). Rather, its only limitation is a monetary one. Massachusetts law does not proscribe a homestead exemption simply because the homestead consists of two separately-deeded parcels, and it does not require a partition of the property of the individual claiming a homestead simply because a part of the claimed homestead is vacant land. Although an owner of property may claim an estate of homestead in only one principal residence, the statute does not directly provide, or indirectly imply, that a principal residence is limited to one parcel. There is no statutory or case law or any authority in Massachusetts that would suggest that an additional parcel is automatically excluded from the homestead. Conversely, as the decisions from the 1880's make clear, the claim of homestead in a separate parcel is not automatically permitted simply because the parcel happens to be contiguous to the residential parcel of the claimant. A fact specific inquiry into the nature and use of the second parcel is required.

To satisfy sections 1 and 2 of the homestead statute the Debtor must (1) occupy the property in question as his principal residence *or* intend to occupy it as such; *and* (2) declare his desire to so occupy the premises in the deed of conveyance or in a separate declaration of homestead. The Debtor recorded a declaration of homestead with respect to both the residential parcel and the adjacent parcel on May 18, 2001. In accordance with Mass. Gen. Laws ch. 188, § 2, this declaration "defeated and discharged" any prior declarations of homestead that the Debtor or his spouse might have had previously recorded. The issue in the instant case, then, is whether the Debtor actually occupied or intended to occupy the adjacent parcel together with the residential parcel

as his principal residence at the commencement of the Chapter 7 bankruptcy case. *See Aldrich v. Gaskill,* 64 Mass. 155, 1852 WL 4632 at *2 (1852).

In the present case, the Debtor introduced, and the Creditors failed to rebut, convincing evidence that the Debtor actually used and occupied the adjoining parcel as part of and in connection with his principal residence as of the date of the filing of his bankruptcy petition. The Debtor proved that he and his family utilized the adjacent parcel as an extension of the residential parcel to a reasonable extent given that the adjacent parcel is 55% wetland. The Debtor landscaped a portion of the adjacent parcel and built a garden shed on the parcel as well as a dog run. The Debtor's children used the adjacent parcel as a play area. The Debtor testified that he purchased the adjacent parcel for the benefit of the family to protect their privacy and to guard against any future development. He and his wife repeatedly rejected offers to sell the adjacent parcel or to grant an easement on it. The Debtor and his family treated the adjoining parcel as an integral part of their homestead, even though the Debtor holds two titles for the parcels.

The Debtor's prior intention of developing the adjacent parcel is not material to the validity of his homestead under the circumstances of this case. First, the Debtor's development plans were preliminary in nature and preceded the filing of the May 18, 2001 declaration of homestead by seven years. Moreover, the Debtor's development plans did not come to fruition at least in part because the adjacent parcel is predominantly wetland—"a wooded deciduous swamp," according to Sabatia, Inc. Whatever the Debtor's intentions were in 1992, as of the petition date, which is the determinative date, the Debtor used and occupied both parcels as his principal residence.

Similarly, the Debtor's future intent to someday give the adjoining parcel to his grown daughter so that she might build a home on the parcel does not defeat the validity of the homestead at the time of the commencement of the Chapter 7 case. The Debtor's future intent is speculative and uncertain, particularly in view of Sabatia, Inc.'s assessment that the adjacent parcel is over 50% wetland. The Debtor never made any effort to execute such a plan, and his intent to transfer the parcel at some undefined point in the future is not sufficient to terminate an existing estate of homestead. In any event, the Debtor's future intent is irrelevant because the Massachusetts homestead statute is phrased in the alternative, creating a valid estate of homestead where the Debtor occupies or intends to occupy the property as his principal residence. Here, the Debtor proved that on the petition date his family occupied both parcels as their residence.

The Creditors did not sustain their burden of proving that at the time of the declaration of homestead the adjacent parcel was not used as part of the Debtor's principal residence. Although the Creditors adduced evidence that the Debtor is a licensed builder, that he had experience in building residential houses, that the adjacent parcel is large enough to be divided into several smaller lots for the purpose of building houses if the Debtor could obtain a building permit or permits, a questionable endeavor in view of Sabatia, Inc.'s report, and that the Debtor had investigated the requirements for obtaining a building permit in late 1991, the Creditors did not rebut convincing evidence that in 2001, the Debtor and his family occupied both parcels as their principal residence. The Debtor's past or future subjective intent is not controlling because the Massachusetts

homestead statute creates a valid homestead estate where the owner *either* occupies *or* intends to occupy the property as the principal residence. Therefore, when the Debtor recorded his declaration of homestead in May of 2001 he created a valid estate of homestead in the adjacent parcel.

Moreover, there is no evidence in this case from which the Court could find that the Debtor abandoned his occupancy of the adjacent parcel by stating his intention to give it to his daughter, and, consequently, even if such method of termination was contemplated by the legislature, the Court cannot find that it applies here. At the time of filing of the bankruptcy case, the Debtor entertained the idea of building a house for his adult daughter on the adjacent parcel. That future intention is not sufficient to constitute unequivocal evidence of abandonment of a homestead estate. As Judge Kenner pointed out in her decision in *In re Webber*, 278 B.R. 294, 298 (Bankr.D.Mass. 2002), "[s]pecific intent . . . is hidden in the mind of the homestead owner, may not be clear even to him or to her, and can change back and forth; it often leaves no public record of itself. It is an inherently unworkable basis for keeping track of estates in land." Therefore, the Court finds that mere intention to alienate the adjacent parcel of land at some undefined point in the future is not sufficient to terminate an existing estate of homestead.

## V. CONCLUSION

For reasons stated above, the Court shall enter an order overruling the Creditors' Objection to the Debtor's claim of exemption. After considering the decisions cited herein and all evidence presented by the parties, and liberally interpreting Mass. Gen. Laws ch. 188, § 1, this Court concludes that (1) the Debtor acquired a valid estate of homestead in the separate parcel of land contiguous to his residential parcel when he recorded the declaration of homestead in May 2001; (2) the Creditors failed to sustain their burden of proof that the Debtor did not occupy the adjacent parcel as his principal residence at the time of filing of this bankruptcy case; and (3) the possibility that the Debtor might alienate the adjacent parcel to his daughter at some indefinite point in the future is insufficient to terminate the existing estate of homestead. Therefore, this Court holds that the Debtor in this case shall be allowed to claim a homestead exemption in the contiguous separate parcel of land.