**In re Robert Louis MARRAMA, Debtor.**

**No. 03–11987–WCH.**

United States Bankruptcy Court, D. Massachusetts, Eastern Division.

April 1, 2004.

David G. Baker, Boston, MA, for debtor.

Jack J. Mikels, Jack Mikels & Associates, Quincy, MA, for Citizens Bank of Massachusetts.

## MEMORANDUM OF DECISION ON OBJECTION TO DEBTOR'S EXEMPTIONS

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. *Introduction*

In his petition, Robert Louis Marrama (the "Debtor") claimed exemptions in real and personal property including an exemption in his interest in a trust on the grounds that it was not property of the estate. Citizens Bank of Massachusetts (the "Bank") objected to those exemptions. I held a hearing and took the matter under advisement. For the reasons set forth below, I will enter a separate order sustaining the objections in part and overruling them in part.

### II. *Background*

On January 28, 2000, the Debtor individually purchased 47 East Main Street, Gloucester MA (the "Gloucester Property"). On January 24, 2001, the Debtor recorded a Declaration of Homestead for the Gloucester Property (the "Homestead Declaration") pursuant to Mass. Gen. Laws ch. 188, § 1. On July 10, 2002, the Bank commenced litigation in Suffolk Superior Court against the Debtor to enforce loan obligations due to the Bank.

On March 11, 2003 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. On Form B1, the cover sheet to the petition, the Debtor listed the Gloucester Property as his street address. On Schedule A, where the Debtor is required to list his interest in any real property, the Debtor listed the Gloucester Property. On Schedule B, where the Debtor is required to list his interest in any personal property, the Debtor stated that he is a "100% beneficiary of Bo–Mar Realty Trust the res of which is *real property in Maine in*

*which the debtor intends to live,* Trust is a spendthrift trust." (Emphasis added.)

On Schedule C, the Debtor claimed an exemption in the Gloucester Property pursuant to Mass. Gen. Laws ch. 188. Further, he claimed an exemption in his beneficial interest in the Bo–Mar Realty Trust (the "Bo Mar Trust") and "[a]ny other exemption to which the debtor may be entitled but has omitted" (the "Catch All Exemption"). He did not provide the statutory basis for the latter two exemptions.

On April 24, 2003, the Debtor appeared at the First Meeting of the Creditors (the "First Meeting of the Creditors") and was questioned about the sworn statements in his petition. The Bank thereafter filed an objection to the exemptions. The Debtor filed a response claiming that the exemptions were proper.

The Bank objects to the exemption in the Gloucester Property on the grounds that the Debtor did not reside there on the Petition Date and therefore the Homestead Declaration is not valid. Alternatively, the Bank argues that the Debtor abandoned the property as of the Petition Date and is thus unable to avail himself of the exemption. In support of these arguments, the Bank refers to the Debtor's testimony at the First Meeting of the Creditors. The Debtor testified that he did not reside at the Gloucester Property and that he had not lived there for *"two months."* [1] The Bank explains that the Debtor said he was residing at 10 Norton Avenue, York, Maine (the "Maine Property"). In addition, the Bank points to the Debtor's statement of his intention to live at the Maine Property on Schedule B. *Citizens Bank of Massachusetts's Objec-*

*tion to the Debtor's Exemption Claims Under 11 U.S.C. 522(b)(2),* Page 5.

In his reply, the Debtor acknowledges that as of the Petition Date, "he was not physically living in the Gloucester property." *Memorandum of Law in Support of Debtor's Reply to Objection of Citizens bank to Certain Exemptions,* Page 5. He nonetheless argues that to acquire a valid homestead in Massachusetts, the declarant must live or intend to live in the property at the time the declaration is recorded. The Debtor points out that the Bank has not argued that the Debtor was not living in the Gloucester Property on the date the Homestead Declaration was recorded. Instead, the Bank objects to the exemption on the incorrect grounds that the Debtor was not living in the Gloucester Property on the Petition Date.

As for abandonment of the Gloucester Property, the Debtor asserts that he did not abandoned his homestead interest in the Gloucester Property as of the Petition Date because "he plans to return there in April after the present leases expire,[2] assuming that he is able to avoid foreclosure." *Memorandum of Law in Support of Debtor's Reply to Objection of Citizens Bank to Certain Exemptions,* Page 5. Moreover, in support of this argument, the Debtor points out that he has continued to pay the mortgage and even though he has rented out the property, he continues to exercise dominion and control over it as a landlord. *Id.* at Page 6. Furthermore, the Debtor cites to his testimony at the First Meeting of the Creditors where he answered the following question by the Trustee, "[s]o what is your long term plan with the Gloucester house?" The Debtor replied, "Well, the long term plan is to hope-

---

**1.** Two months prior to the First Meeting of the Creditors would be approximately two weeks before the Petition Date.

**2.** The property is presently rented to two tenants.

fully some day reside there." *Id.* at Page 6.

The Debtor rebuts his statement of intention to live at the Maine Property on Schedule B by saying that the Maine Property is unheated during the winter months and he therefore lives in Boston during the winter. He asserts that Schedule B "merely reflects the fact that as of the petition date, [the Debtor] was living in Maine and intended to continue to do so, not that he never intended to return to Gloucester." *Id.* at Page 6. Consequently, the Debtor argues that his actions, and his testimony, are not of someone who has abandoned a homestead and therefore his claim for exemption in the Gloucester Property is valid.

Lastly, the Bank objects to the exemptions in the Bo Mar Trust and the Catchall Exemption on the grounds that the Debtor lacks statutory basis in his claims and therefore these exemptions are invalid. *Citizens Bank of Massachusetts's Objection to the Debtor's Exemption Claims Under 11 U.S.C. 522(b)(2),* Page 6 and 7. In his reply, the Debtor admits that the listing of the Bo Mar Trust on the Schedule C was not for purposes of claiming an exemption, but rather to declare that he has an interest in the Bo Mar Trust. *Memorandum of Law in Support of Debtor's Reply to Objection of Citizens bank to Certain Exemptions,* Page 7. Further, he argues that the Catch–All Exemption "has no impact on the bankruptcy estate, but merely reflects the general right of a debtor to amend the schedule at any time prior to the closing of the case." *Id.* at Page 8 (citing *In re St. Angelo,* 189 B.R. 24 (Bkrtcy.D.R.I.1995)).

### III. *Analysis*

#### A. *The Burden of Proof and Exemptions in Bankruptcy*

The party objecting to a claim of exemption bears the burden of proving that the debtor did not properly claim the exemption. Fed.R.Bankr.P. 4003(c). Thus, the objecting party bears the burden to establish that the debtor did not create a valid estate of homestead, or alternatively, that it no longer existed at the time of the filing of the bankruptcy. *In re Edwards,* 281 B.R. 439, 446 (Bankr.D.Mass. 2002).

Furthermore, "[if] the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper ... the burden of persuasion, however, always remains with the objecting party." *Carter v. Anderson,* 182 F.3d 1027, 1029 (9th Cir.1999).

#### B. *The Debtor's Eligibility for a Massachusetts Homestead Exemption*

11 U.S.C. § 541(a)(1) provides that the filing of a petition creates an estate which is comprised of, *inter alia,* "all legal or equitable interests of the debtor in property as of the commencement of the case." Subsection (b) of § 522 enables a debtor to choose between the federal exemptions listed in 11 U.S.C. § 522(d), or any exemptions that may be available under state or local law that is applicable on the date of the filing of the petition ..." *In re Webber,* 278 B.R. 294, 297 (Bankr.D.Mass.2002) ("the Debtor's right to or eligibility for a particular exemption is fixed and determined as of the date of his bankruptcy petition."), *In re Robbins,* 187 B.R. 400, 403 (Bankr.D.Mass.1995) ("As a general rule, the right to exemptions under the Bankruptcy Code is determined on the date the bankruptcy petition is filed.").

In order to obtain an estate of homestead in Massachusetts, an owner must file a declaration or set forth the same in a deed and must occupy or intend

to occupy the property[3]. Further, the owner must occupy or intend to occupy the property. These declarations or deeds must have been recorded pre-petition in order for the owner to obtain an exemption under the Bankruptcy Code. *See e.g., In re Webber,* 278 B.R. 294, 297 (Bankr.D.Mass. 2002).

Once the owner has filed for bankruptcy and an exemption objection is filed, the Court may review whether the declaration was valid at the time it was filed. *In re Roberts,* 280 B.R. 540, 545 (Bankr. D.Mass.2001) (sustaining chapter 7 trustee's exemption objection since debtor lacked necessary intent to occupy property at time declaration was filed). That is, the Court may consider whether the owner filed the proper documentation and had the requisite intent at the time of the filing of the declaration.

In this case, the Bank does not object to the validity of the declaration at the time that it was filed. Rather, the Bank first objects to the validity of the Homestead Declaration on the grounds that the Debtor did not occupy the Gloucester Property on the Petition Date. The statutory requirement of occupy or intend to occupy, however, is only applicable at the time of the filing of the declaration and does not apply during the duration of the declaration. *In re Webber,* 278 B.R. 294, 297 (Bankr.D.Mass.2002). Therefore, the objection on this ground is overruled.

The Massachusetts statute establishes three methods for terminating an estate of homestead, all of which require a writing.[4] *See In re Webber,* 278 B.R. 294, 297–98

(Bankr.D.Mass.2002). "Whether an estate of homestead can be terminated by an act of abandonment is subject to dispute." *In re Taylor,* 280 B.R. 294, 297 (Bankr. D.Mass.2002) (citations omitted) (illustrating case law and the disputed issue of abandonment).

Abandonment can be described as the "cessation of the owner's specific intent to occupy the premises." *In re Webber,* 278 B.R. 294, 297 (Bankr.D.Mass. 2002). If a claim of homestead can be terminated by abandonment, the evidence by which I would make such determination must be clear and convincing. *In re Taylor,* 280 B.R. 294, 298 (Bankr.D.Mass.2002) (citing *Silloway v. Brown,* 94 Mass. 30, 33 (1866)) ("but if any acts of abandonment, short of acquiring a new homestead, will defeat a homestead estate, they must be such as afford unequivocal evidence of an intent to abandon it").

In *In re Webber,* the court acknowledges the possibility that a debtor can terminate a homestead by abandonment, but, it ultimately concluded that because the Massachusetts statute never mentions the issue, "the Massachusetts legislature likely meant to preclude termination [of a homestead] by simple abandonment." 278 B.R. 294, 298 (Bankr.D.Mass.2002). I disagree.

There are several Massachusetts cases which recognize abandonment as a method of terminating a homestead. *See e.g., Foster v. Leland,* 141 Mass. 187, 6 N.E. 859 (1886) (holding that because petitioner left voluntarily, and remained away voluntarily for years, she was unable to avail herself

---

**3.** An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one who rightfully possess the premise by lease or otherwise and who *occupy or intend to occupy said home as a principal residence.*

Mass. Gen. Laws ch. 188, § 1 (emphasis added).

**4.** For example, Section 2 provides that the acquisition of a new estate or claim of homestead defeats a prior estate. Mass. Gen. Laws ch. 188, § 2.

of the homestead), and *Drury v. Bachelder*, 77 Mass. 214, 216 (1858) (acknowledging that homestead right may be lost by acts of abandonment, however, acts such as leaving the house, removing furniture, and going to work elsewhere did not constitute "acts of abandonment of an unequivocal character"). I conclude that the Supreme Judicial Court would rule that a homestead estate could be terminated by abandonment.

Whether there has been an abandonment is largely a question of intention. *See e.g., Foster v. Leland*, 141 Mass. 187, 188, 6 N.E. 859 (1886) (stating that there was "no intention of returning" and therefore, abandonment was evident). Intent to abandon a homestead is difficult to determine. *In re Webber*, 278 B.R. 294, 297 (Bankr.D.Mass.2002) ("intent ... is hidden in the mind of the homestead owner, may not be clear even to him or her, and can change back and forth; it often leaves no public record of itself"). These cases strongly suggest that intention can be manifested by the outward acts of the declarant.

A determining factor of whether a homestead has been abandoned is whether the absence from the property is intended to be permanent or temporary. If it is temporary, the declarant did not have the requisite intent to abandon. For example, in *Pratt v. Pratt*, the petitioner left the premises and was taken care of by her neighbors for a period of one or two months. 161 Mass. 276, 37 N.E. 435 (1894). The petitioner "left the premises unwillingly, and intended to return". *Id.* at 436. Notwithstanding her intention, she did not return and lived in various places in the vicinity. *Id.* at 436. Thereafter, she removed the furniture and rented portions of the premises to four different tenants. The court found that the petitioner intended to return to the premises, and

held that she did not abandon the homestead. Similarly, in *Dulanty v. Pynchon*, the declarant removed his family temporarily, rented the premises, and eventually returned. 88 Mass. 510 (1863). The court found that the declarant intended to return and held that the "temporary absence from the estate did not operate to impair his right to the homestead." *Id.* at 512. On the other hand, in *Paul v. Paul*, the petitioner did not occupy the homestead and, having built another house in which she moved all of her things into, and resided there, the court held that the facts indicated that she had no intention of returning to the homestead estate. 136 Mass. 286 (1884).

Based on the foregoing, abandonment would be conclusive if the Debtor's absence from the Gloucester Property was intended to be permanent. In other words, if the Debtor temporarily moved out, rented the premises, but had the intent to return to the property, then the Debtor has not abandoned the estate. Further, the Bank has the burden to prove that the Debtor had the requisite intent to abandon the estate by bringing forth clear and convincing evidence.

It is uncontested that the Debtor was not living at the Gloucester Property on the Petition Date. Nonetheless, the Debtor contends that it is his intention to some day return and reside at the Gloucester Property. At the First Meeting of the Creditors, the Debtor stated this intention. The Bank did not bring forth unequivocal evidence from which I could conclude that the Debtor had no intention of returning to the premises. Further, the fact that the Debtor stated on Schedule B that he intends to live in the Maine Property, is not conclusive that he never intends to return to the Gloucester Property. Therefore, notwithstanding the fact that by this decision I am clarifying the applicable legal

standard for abandonment, I conclude that the Bank demonstrated in its pleading that it understood the standard,[5] but failed to offer evidence which would substantiate the same. Therefore, I will overrule this objection.

### C. *The Bo Mar Trust Exemption*

 The Debtor claimed an exemption for "[t]he beneficial interest in the Bo–Mar Realty Trust [which] is not property of the estate pursuant to 11 U.S.C. § 541(c)." He did not list a statutory basis for the claim. An exemption may be claimed only in property of the estate pursuant to 11 U.S.C. § 522(b). By way of example, the statute allows a debtor to claim an exemption in "[t]he debtor's aggregate interest, not to exceed $17,425 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence ..." 11 U.S.C. § 522(d)(1).

The Debtor contends that he listed the property on Schedule C because he was "merely complying with his obligation to inform the Court the Trustee and creditors as to his position regarding his property interest." *Memorandum of Law in Support of Debtor's Reply to Objection of Citizens bank to Certain Exemptions,* Page 7. Since the Debtor admits that he is not claiming an exemption in his interest in the Bo Mar Trust but rather to declare that he has an interest in the Bo Mar Trust, his claim is improper and I will enter an order sustaining the Bank's objection.[6]

### D. *The Catch All Exemption*

 The Catch All Exemption is not an exemption for specific property and the Debtor did not explain the statutory basis on which he claims this exemption. Accordingly, this exemption does not comply with the Bankruptcy Code requirements.

 It is the Debtor's obligation to specify all property that he claims to be exempt in his schedules. 11 U.S.C. § 522(1) ("[t]he debtor shall file a list of property that the debtor claims as exempt ..."), Bankruptcy Rules 1007 and 4003(a). I agree with the Bank's contentions that this particular exemption is over broad and lacks statutory basis. I therefore hold that the Catch All Exemption is improper and the Bank's objection will be sustained.

### IV. *Conclusion*

For the reasons set forth herein, I will enter separate orders sustaining the objections to the claimed exemptions to the Bo Mar Trust and the Catch All Exemption. The objection to exemption claim in the Gloucester Property is overruled.

---

**5.** The Bank asserted that *In re Taylor* stands for the proposition that "[i]n the absence of a written release or termination, unequivocal evidence of an intent to abandon a homestead estate will defeat a Debtor's exemption claim." *See Citizens Bank of Massachusetts's Objection to the Debtor's Exemption Claims Under 11 U.S.C. 522(b)(2),* Page 5. (citing *In re Taylor,* 280 B.R. 294 (Bankr.D.Mass.2002)).

**6.** I note, in response to the Debtor's Memorandum of Law, that this Court is not now deciding the issue of whether "the *res* of the [Bo Mar] Trust is property of the estate" or whether the time has passed for objections to be raised as to issues of whether the "trust is invalid or that it is not truly a spendthrift trust". *Memorandum of Law in Support of Debtor's Reply to Objection of Citizens bank to Certain Exemptions,* Page 7. Since these issues are not properly raised in response to the Bank's Objection, I decline to address the merits of the Debtor's argument.